IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-02314-NYW-NRN

KYLE SPRATLEY,

 Plaintiff,

v.

STATE FARM AUTOMOBILE INSURANCE COMPANY, and
STATE FARM FIRE AND CASUALTY COMPANY,

 Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants State Farm Automobile Insurance Company's and State Farm Fire and Casualty Company's (collectively, "State Farm" or "Defendant") Motion for Partial Summary Judgment ("Motion"). [Doc. 38, filed November 11, 2022]. Upon review of the Motion and corresponding briefing, the entire docket, and applicable legal standards, the Court finds that oral argument would not materially assist in the resolution of these matters. For the reasons set forth herein, the Motion for Partial Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This action arises from a motor vehicle collision on August 22, 2018 (the "Collision"), wherein Plaintiff Kyle Spratley ("Mr. Spratley" or "Plaintiff") was the restrained rear passenger in one of the three vehicles involved. *See* [Doc. 7]. Mr. Spratley sought underinsured motorist ("UIM") benefits through his insurer, Defendant State Farm. After State Farm denied Plaintiff's request for UIM benefits, he initiated this action by filing a Complaint against State Farm in

Denver County District Court on August 2, 2021. *See* [*id.*]. In the Complaint, Mr. Spratley asserts three claims against State Farm: (1) breach of contract (Count I); (2) common law bad faith breach of insurance contract (Count II); and (3) statutory unreasonable delay or denial under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (Count III). [*Id.* at 4–7]. On August 26, 2021, State Farm removed the case to the United States District Court for the District of Colorado based on diversity jurisdiction. *See* [Doc. 1].

Following the close of discovery, on November 11, 2022, State Farm filed the instant Motion for Partial Summary Judgment. [Doc. 38]. Plaintiff responded on December 24, 2022, [Doc. 42], and Defendant replied on January 6, 2023, [Doc. 43]. The Motion is thus ripe for disposition.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or a denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). For instance, "if evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## ANALYSIS

### I. Undisputed Material Facts

The Court identifies the following undisputed facts as material for purposes of resolving the Motion for Partial Summary Judgment:

1. On February 11, 2014, Plaintiff underwent cervical surgery. [Doc. 38-1 at 32:11–15; Doc. 38 at ¶ 1; Doc. 42 at 3].

3

2. On March 18, 2018, Plaintiff underwent further cervical surgery. [Doc. 38-1 at 38:21–25; Doc. 38 at ¶ 2; Doc. 42 at 3].

3. On August 22, 2018, Plaintiff was involved in a motor vehicle accident caused by Ryan Whitley. [Doc. 1 at ¶¶ 9–19; Doc. 38 at ¶ 3; Doc. 42 at 3].

4. Plaintiff was a restrained rear passenger of a vehicle driven by Ronald Annese. [Doc. 1 at ¶ 9; Doc. 38 at ¶ 4; Doc. 42 at 3].

5. Ryan Whitley's vehicle impacted the rear of a vehicle operated by Jeanette Alberg and, in turn, the Alberg vehicle was pushed into the rear of the Annese vehicle. [Doc. 1 at ¶¶ 10–15; Doc. 38 at ¶ 5; Doc. 42 at 3].

6. Ryan Whitley was insured under a policy of insurance issued by Bristol West Insurance Company that provided bodily injury liability coverage in the amount of $25,000. [Doc. 1 at ¶ 23; Doc. 38 at ¶ 6; Doc. 42 at 3].

7. At the time of the August 22, 2018 motor vehicle accident, Plaintiff was insured under one or more policies of insurance issued by State Farm that included UIM coverage. [Doc. 1 at ¶ 20; Doc. 38 at ¶ 8; Doc. 42 at 3].

8. On May 17, 2019, Plaintiff requested State Farm's consent to settle his bodily injury claim with Mr. Whitley's insurer, and advised State Farm that he was making a claim under his UIM coverage. [Doc. 42 at ¶ 1; Doc. 43 at 4, ¶ 1]; *see also* [Doc. 42-3 at 2]. In that letter, Plaintiff's counsel stated she would be "forwarding a demand shortly." [Doc. 42-3 at 2].

9. Plaintiff settled his claim against Mr. Whitley in exchange for payment of $25,000 by Bristol West Insurance Company. [Doc. 1 at ¶¶ 24–26; Doc. 38 at ¶ 7; Doc. 42 at 3].

10. On December 14, 2020, Plaintiff's counsel advised State Farm that Plaintiff would be making a UIM claim. Plaintiff's counsel further advised State Farm that after she thoroughly

4

evaluated this matter and gathered sufficient documentation for a proper legal analysis, she would be submitting documentation to assist Defendant in its evaluation. [Doc. 38-2 at ¶ 4; Doc. 38 at ¶ 9; Doc. 42 at 3].

11. On December 20, 2020, Defendant requested that Plaintiff complete a medical provider summary sheet and authorization for release of information so that Defendant could request medical records/bills from Plaintiff's treating health care providers. [Doc. 38-2 at ¶ 5; Doc. 38 at ¶ 10; Doc. 42 at 3].

12. On February 16, 2021, Plaintiff returned the authorization for release of information to Defendant along with a computation of medical expenses in the amount of $59,156.13. [Doc. 38-2 at ¶ 6; Doc. 38 at ¶ 11; Doc. 42 at 3; Doc. 42-6 at 1].

13. On March 12, 2021, Plaintiff provided Defendant with updated medical records and billing for treatment that now increased to $142,250.29. [Doc. 38-2 at ¶ 7; Doc. 38 at ¶ 12; Doc. 42 at 3; Doc. 42-6 at 2].

14. On April 14, 2021, Plaintiff provided Defendant with additional medical bills that increased his total medical expenses to $147,476.29. [Doc. 38-2 at ¶ 8; Doc. 38 at ¶ 13; Doc. 42 at 3; Doc. 42-6 at 3].

15. On June 24, 2021, State Farm notified Plaintiff via voicemail that it had performed an updated evaluation and was in the process of requesting authority to discuss a settlement offer and *Fisher* payment.[1] [Doc. 42 at ¶ 17; Doc. 43 at 7, ¶ 17].

---

[1] In *State Farm Mutual Automobile Insurance Co. v. Fisher*, 418 P.3d 501 (Colo. 2018), the Colorado Supreme Court ruled, in the context of statutory bad faith, that an insurer cannot withhold payment of undisputed covered benefits simply because other portions of an insured's UIM claim remain disputed. *Id.* at 506. These interim payments of undisputed covered benefits have become known as *Fisher* payments.

16. By letter dated July 13, 2021, Plaintiff requested that State Farm provide an update on their evaluation of his claim and forward to him the undisputed amount owed to him. [Doc. 38-2 at ¶ 10; Doc. 38 at ¶ 15; Doc. 42 at 3]; *see also* [Doc. 42-8 at 1].

17. On July 19, 2021, State Farm advised Plaintiff that based on the information that had been submitted, it had questions regarding the mechanism of injury and causation. Accordingly, State Farm informed Plaintiff that they planned to proceed with an independent medical examination ("IME"). [Doc. 38-2 at ¶ 11; Doc. 38 at ¶ 16; Doc. 42 at 3]; *see also* [Doc. 42-9 at 1].

18. On August 2, 2021, Plaintiff advised State Farm that he would agree to undergo an IME. Also at that time, he asked that State Farm provide him with a breakdown of the prior payments they had made to him. [Doc. 38-2 at ¶ 12; Doc. 38 at ¶ 17; Doc. 42 at 3]; *see also* [Doc. 42-10].

19. On August 2, 2021, Plaintiff filed this lawsuit. [Doc. 7].

20. On August 5, 2021, State Farm advised Plaintiff that their current evaluation of his UIM claim was "fluid" pending the results of an IME. State Farm further advised Plaintiff that at the time they made a previous payment of $9,542.34, they considered medical bills of $34,542.34 and applied an offset of $25,000 that Plaintiff had received from Bristol West. [Doc. 38-2 at ¶ 14; Doc. 38 at ¶ 19; Doc. 42 at 3].

**II.   Discussion**

State Farm seeks summary judgment as to Plaintiff's common law bad faith and statutory unreasonable delay or denial claims under Counts II and III, respectively. [Doc. 38]. It argues

6

that "Plaintiff simply disagrees with Defendants'[2] evaluation of his claim" and "[n]o reasonable jury could find, based on the same evidence Plaintiff provided to Defendants, that Defendants acted in bad faith or that they did not have a reasonable basis for their evaluation of his claim." [*Id.* at 10–11]. For support, State Farm contends that "the amount of benefits, if any, owed to Plaintiff is fairly debatable" and, under Colorado law, "it is reasonable for an insurer to challenge claims that are fairly debatable." [*Id.* at 6]; *see also* [*id.* at 7 ("In the end, Plaintiff's claim is nothing more than a value dispute. A mere value dispute, however, is not actionable.")]. In addition, State Farm maintains that "[t]he chronology of events set forth in [its] 'Statement of Undisputed Material Facts' demonstrates that Defendants timely responded to inquiries from Plaintiff and considered new information in their evaluation as it was supplied by Plaintiff." [*Id.* at 9]. State Farm also insists that it "provided Plaintiff with an explanation of [its] evaluation so that [its] evaluation was transparent and easily understandable." [*Id.*].

In response, Mr. Spratley counters that, based on the evidence, a jury could find that "State Farm's investigation and handling of Plaintiff's UIM claim was one-sided and contrary to Colorado law." [Doc. 42 at 1–2]. Specifically, he argues that State's Farm's "claim investigation was untimely, inadequate and carried out in bad faith," on the grounds that State Farm purportedly began questioning the mechanism of Plaintiff's injury in October 2019, but did not notify Plaintiff about this issue until July 2021. [*Id.* at 13–15]. Mr. Spratley also contends that State Farm "requested medical records and bills from [only] a few of the noted medical providers on the list Plaintiff provided and only in October 2019," but it failed to perform "any further investigation and waited until Plaintiff submitted his own medical records in bills" beginning in February 2021.

---

[2] State Farm uses the plural "Defendants" in its briefing, and the Court quotes State Farm's arguments without changing the plural form of "Defendants" to the singular "Defendant." However, the Court will continue to use the singular form when not quoting State Farm's briefs.

7

[*Id.* at 14]. Plaintiff further claims that, after February 2021, "State Farm never responded to any of [his] correspondence and it was only after Plaintiff was forced to threaten filing a lawsuit did State Farm advise Plaintiff that it was questioning the Mechanism of Injury on July 17, 2021 and needing an IME." [*Id.*]. He also argues that it was unreasonable for State Farm to continue to look to other potential insurance coverage despite being advised in August 2019 that Federated Insurance ("Federated")—the insurance company for the vehicle Plaintiff was in at the time of the Collision—did not carry UIM coverage for Mr. Spratley. [*Id.* at 14–15]. Therefore, Mr. Spratley continues, "[g]enuine issues of fact exist as to the reasonableness of State Farm's claim handling and its questioning of the mechanism of injury which was first noted in October 2019 but not brought to Plaintiff's attention until July 19, 2021." [*Id.* at 15]. According to Plaintiff, a "reasonable jury could find that a 2-year delay in advising Plaintiff of this potential issue related to his UIM claim was conducted in bad faith" and State Farm's "attempt to not pay on Plaintiff's UIM claim despite clear evidence that there [were] no other applicable UIM policies" was in bad faith. [*Id.* at 15].

In the Reply, State Farm argues that it "did not have a duty to advise Plaintiff that [State Farm] had questions concerning the mechanism of injury," and Plaintiff has not established that any such duty was owed to him, for instance, by "diclos[ing] an expert witness to testify that insurance standards require an insurer to advise an insured that it questions the mechanism of injury or when that issue must be presented to the jury." [Doc. 43 at 9]. State Farm also disagrees with Plaintiff's narrative regarding its investigation between October 2019 and July 2021. *See* [*id.* at 10–13]. For instance, it argues that between December 2019 and December 2020, "Plaintiff did not provide Defendants with any records/bills despite multiple requests from Defendants for the status of his claim." [*Id.* at 11]. State Farm further claims that it "wait[ed] for additional

8

documentation to evaluate Plaintiff's claim" based on the representations in the correspondence from Plaintiff's counsel on December 14, 2020; and began evaluating Plaintiff's claim upon receipt of his documentation between February 2021 and April 2021. [*Id.* at 11–12].

### A. Legal Framework

Colorado law provides for two types of claims based on an insurer's unreasonable conduct throughout the claims process: (1) statutory unreasonable delay or denial, and (2) common law bad faith breach of insurance contract (collectively, "bad faith claims"). First, a statutory claim arises when an insurer delays or denies payment to its insured without a reasonable basis. *See* Colo. Rev. Stat. § 10-3-1115(1)(a); *Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020). To prove a claim of unreasonable delay or denial, an insured must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018); *see also Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015) (defining an unreasonable denial as "when an insurer denies a claim outright" and an unreasonable delay as "when the insurer pays on a claim but disputes the value of that claim, thereby delaying payment of the claim's full value").

Second, under Colorado law, an insurer owes its insured a "non-delegable duty of good faith and fair dealing," and the breach of that duty gives rise to a separate cause of action based in common law tort principles. *TAF, L.L.C. v. Hartford Fire Ins. Co.*, 549 F. Supp. 2d 1282, 1289 (D. Colo. 2008) (citations omitted). To establish a common law bad faith claim, the insured must demonstrate "that (1) the insurer's conduct was unreasonable, and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011) (citation omitted); *see also Soicher*,

9

351 P.3d at 565 (stating that "an insurer has a duty to investigate and adjust claims in good faith"). "Whether an insurer has in bad faith breached its duties to an insured is a question of reasonableness; in other words, would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *TAF*, 549 F. Supp. 2d at 1289 (quotation omitted); *see also Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1219 (Colo. App. 2010). Accordingly, a common law bad faith claim "requires a determination of the reasonableness of an insurance compan[y's] denial or delay in paying a claim," and, therefore, "necessarily goes to the handling of a claim." *TAF*, 549 F. Supp. 2d at 1289.

Nevertheless, and for the purposes of this Order, the legal standard between these claims is only "slightly different" because "[i]n the statutory claim, the only element at issue is whether the insurer denied benefits without a reasonable basis; whereas, a common law claim must show both unreasonableness and that the insurer knew that its conduct was unreasonable or recklessly disregarded that fact." *Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574, 579–80 (10th Cir. 2014). The reasonableness of the insurer's conduct is viewed objectively. *Sanderson*, 251 P.3d at 1217.

  **B.**  **There is a Genuine Issue of Material Fact as to Reasonableness.**

State Farm primarily focuses on whether Plaintiff can establish that State Farm acted unreasonably, which is a common element of Plaintiff's claims under Counts II and III. *See* [Doc. 38 at 6–10]. As mentioned above, Mr. Spratley advances three overall arguments to support his position that State Farm acted unreasonably. First, he contends that "State Farm never reached out to Plaintiff or Plaintiff's attorney until July 19, 2021 – almost 2 years after State Farm began questioning the mechanism of injury." [Doc. 42 at 14]. Second, he argues that it was unreasonable for State Farm to continue to look to other potential insurance coverage despite being advised in August 2019 that Federated did not carry UIM coverage for Mr. Spratley. [*Id.* at 14–15]. Third,

10

Mr. Spratley challenges the fact that State Farm only requested medical records from Plaintiff's medical providers in October 2019, arguing that "State Farm choose [sic] to not do any further investigation and waited until Plaintiff submitted his own medical records and bills" starting in February 2021. [*Id.* at 14]. Based on the record before it, this Court cannot conclude that State Farm is entitled to judgment as a matter of law based on reasonableness at this juncture.

***Duty to Advise.*** First, although State Farm contends that it "did not have a duty to advise Plaintiff that [it] had questions concerning the mechanism of injury," [Doc. 43 at 9], it fails to provide sufficient authority for this legal conclusion. While the issue of whether a defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for the Court to resolve under Colorado law, *see Cassidy v. Millers Cas. Ins. Co. of Tex.*, 1 F. Supp. 2d 1200, 1206 (D. Colo. 1998), this Court notes that every insurance contract has an implied covenant of good faith and fair dealing. *Id.* State Farm relies upon *Lira v. Shelter Insurance Co.*, 913 P.2d 514 (Colo. 1996), for this proposition. *See* [Doc. 43 at 9]. In *Lira*, the Colorado Supreme Court held that "[t]he tort duty imposed upon the insurer . . . must be within the scope of the obligations imposed by the contract." *Lira*, 913 P.2d at 516. However, State Farm does not explain how that case stands for the proposition that State Farm had no duty to advise Mr. Spratley when it first questioned the mechanism of injury, as Plaintiff argues. Notably, neither Party directly references the State Farm policy at issue in this case, let alone discusses what obligations are or are not imposed under that policy. *See generally* [Doc. 38; Doc. 42; Doc. 43]. And particularly when a party has been represented by counsel since the inception of this action, "it is not this court's duty, after all, to make arguments for a litigant that he has not made for himself." *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015); *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform

11

research on behalf of litigants).  Thus, even though it is undisputed that Mr. Spratley did not make a demand for UIM benefits until December 2020—more than a year and a half *after* Plaintiff's counsel advised State Farm that it would be "forwarding a demand shortly" for UIM benefits, *compare* [Doc. 43-1 at 1] *with* [Doc. 38 at ¶ 9; Doc. 42 at 3]—this Court cannot conclude, as a matter of law based on the record before it, that State Farm had no duty to inform Mr. Spratley that it had concerns regarding the mechanism of injury.[3]  The Court must view the factual record and draw all reasonable inferences in favor of Plaintiff.  *See Zia Shadows*, 829 F.3d at 1236.  And the factual record in this case reflects that State Farm first noted that it was questioning the mechanism of Plaintiff's injury in October 2019, but did not bring it to Plaintiff's attention until July 2021.  *Compare* [Doc. 42-1 at 15] *with* [Doc. 42-9 at 1].  It is therefore more appropriate for a jury to decide, based on the totality of circumstances, whether or not it was reasonable for State Farm to wait nearly two years to notify Plaintiff that it was questioning the mechanism of his injury.

***Other Insurance Coverage.***  Second, Plaintiff contends that State Farm engaged in bad faith by continuing to look to other potential insurance coverage despite being advised in August 2019 that Federated (the driver's insurance company) did not carry UIM coverage for Mr. Spratley. [Doc. 42 at ¶¶ 3, 12; *id.* at 14–15; Doc. 43 at 4, ¶ 3].  While State Farm admits that it was advised by Federated[4] that the Federated policy did not have any UIM coverage in August 2019, *see* [Doc. 43 at 4, ¶ 3], it fails to address how it acted reasonably in continuing to seek coverage from

---

[3] In so ruling, this Court does not intend to preclude any Party from addressing the issue of duty, and the scope of such duty, at trial.

[4] While Plaintiff refers to this third-party policy as "Federate," it appears in State Farm's claim notes, and in State Farm's briefing, as "Federated."  [Doc. 42-1 at 11, 16; Doc. 43].  Because Plaintiff relies on State Farm's claim notes for its assertions of undisputed facts, *see* [Doc. 42 at ¶ 3], this Court will use the term "Federated."

Federated thereafter. Accordingly, it is more appropriate for a jury to determine, under the factual circumstances of this case, whether or not State Farm acted reasonably in continuing to look to other potential sources of insurance coverage after it was notified that no such coverage existed under the Federated policy.

***State Farm's Investigation.*** Third, the Court also finds that questions regarding the reasonableness of State Farm's investigation and review of Plaintiff's medical records overall are more appropriate for a jury. For instance, State Farm insists that, by letter dated June 24, 2021,

> Defendants requested Plaintiff forward any wage loss documentation if he wanted wage loss to be considered as part of his claim. In addition, the information in Plaintiff['s] medical records referenced a prior cervical fusion. Plaintiff was claiming a cervical injury due to this accident and, therefore, Defendants requested prior medical records. Defendants also informed Plaintiff that they may request an Independent Medical Examination or Records Review.

[Doc. 38 at ¶ 14]; *see also* [Doc. 42-2 at 2–3]. But Plaintiff disputes that he ever received this correspondence from State Farm. *See* [Doc. 42 at ¶ 14]. Specifically, Plaintiff claims that the letter was sent to "an incorrect email [address]," and points to evidence reflecting that the email containing the letter was "bounced back as undeliverable and was documented in the claim's correspondence." [*Id.*]; *see also* [Doc. 42-2 at 4–7].[5]

Moreover, as noted above, on July 19, 2021, State Farm informed Plaintiff that it had "questions regarding the mechanism of injury and causation." [Doc. 42-9 at 1]. In the letter, State Farm asserted that it had "verified with the owner of the 2009 Dodge Magnum involved in the accident that there was no damage to their vehicle and no repairs were necessary." [*Id.*]; *see also*

---

[5] State Farm "maintain[s] that the letter was properly sent to Plaintiff's counsel as reflected in Exhibit B to their Motion." [Doc. 43 at 4]. However, "Exhibit B" to State Farm's Motion is an affidavit from a State Farm employee, which does not articulate any supporting evidence from which the Court can discern an undisputed fact about the delivery of the letter at issue. *See* [Doc. 38-2].

13

[Doc. 7 at ¶ 9 (alleging Ronald Annese was the driver of the 2009 Dodge Magnum)]. State Farm also notified Plaintiff that it was requesting an independent medical examination "to better understand what is reasonable and related treatment" with respect to the Collision. [Doc. 42-9 at 1]. By letter dated August 2, 2021, Plaintiff agreed to undergo the IME. [Doc. 42-10]. Plaintiff also requested information regarding, *inter alia*, (1) what steps State Farm took to evaluate Plaintiff's claim "prior to" June 24, 2021; (2) when State Farm contacted "the owner of the Dodge Truck" to determine there was no damage to their vehicle; and (3) what "further investigation" State Farm performed related to the Collision. [*Id.*]. State Farm responded three days later, on August 5, 2021. *See* [Doc. 42-11]. State Farm represented, for instance, that:

> Our evaluation for Mr. Spratley's claim has been ongoing as new information was received. When we received the April 14, 2021 correspondence it was noted that additional bills and records were ordered and would be supplemented upon receipt. During this time our evaluation was being updated with the information currently on file. *Once the evaluation was routed for file authority, additional questions were presented by management with regard to the damages and mechanism of injury. Based on review of the police report and our initial conversations with the owner of the 2009 Dodge Magnum it was confirmed there were minimal to no damages to the vehicle Mr. Spratley was occupying*.

[*Id.* at 1 (emphasis added)]. However, it is unclear whether these responses sufficiently specify the steps that State Farm took to investigate Plaintiff's claim, including any dates, as requested by Plaintiff in the August 2, 2021 correspondence. *See* [Doc. 42-10 at 1]. Notably, State Farm also claimed in that letter that "[t]he general (non-economic) damages [were] subjective and susceptible to disagreement." [Doc. 42-11 at 1]. In the instant Motion for Partial Summary Judgment, however, State Farm suggests that *all benefits*—whether economic or non-economic—are "fairly debatable." *See, e.g.*, [Doc. 38 at 6 ("Here, however, the amount of benefits, if any, owed to Plaintiff is fairly debatable. Defendants have the right to challenge Plaintiff's valuation of a

14

claim.")].[6]   In sum, the Court does not find that State Farm's responses, whether in its correspondence or its briefing with respect to the instant Motion, sufficiently resolve the issue of whether its investigation was reasonable to entitle it to summary judgment on Plaintiff's claims. *See Dennis v. Am. Fam. Mut. Ins. Co.*, No. 15-cv-02562-PAB-STV, 2017 WL 4297342, at *3 (D. Colo. Sept. 27, 2017) ("Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists.").

### C.   State Farm is Entitled to Summary Judgment on Count II.

For the common law bad faith claim, Plaintiff must also prove a subjective element; i.e., that State Farm either knew its conduct was unreasonable or acted in reckless disregard of whether its conduct was unreasonable.  *See Bruce v. Pac. Specialty Ins. Co.*, No. 15-cv-01323-RM-CBS, 2016 WL 11693598, at *10 (D. Colo. Aug. 15, 2016) (citing *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496–97 (Colo. App. 2011)), *report and recommendation adopted*, No. 15-cv-01323-RM-STV, 2017 WL 11545237 (D. Colo. Feb. 8, 2017), *aff'd*, 755 F. App'x 731 (10th Cir. 2018); *Cary v. United of Omaha Life Ins. Co*., 68 P.3d 462, 469 (Colo. 2003)).  In its affirmative Motion and on Reply, State Farm contends that Plaintiff cannot establish that "Defendants knew that their position was unreasonable or recklessly disregarded the unreasonableness of their position" and that "[a]t a minimum, Plaintiff has not presented any facts to support his Second Claim for Relief – Bad Faith Breach of Contract."  [Doc. 38 at 9; Doc. 43 at 13].  For support, State Farm cites to Paragraphs 59 and 60 of the Complaint, arguing that "Plaintiff's attorney alleges, in conclusory statements, that Defendants' actions were unreasonable and that they knew their conduct was

---

[6] Likewise, the cases referenced by State Farm to support its argument that Plaintiff's claims are merely "value disputes" are also unavailing for the reasons discussed herein.  *See* [Doc. 38 at 7–10].

unreasonable or recklessly disregarded the fact that their conduct was unreasonable"; but Plaintiff "fails to provide any factual support for his allegations." [Doc. 38 at 9]; *see also* [Doc. 43 at 13].

Plaintiff counters that State Farm knew that it was questioning the mechanism of Plaintiff's injury nearly two years before it raised this issue with him, and only raised the issue after Plaintiff threatened to file this action. *See, e.g.*, [Doc. 42 at 13–14]. Plaintiff also adds that it is undisputed that State Farm knew that Federated did not carry UIM coverage for Mr. Spratley as of August 2019, but State Farm continued to look for other coverage in order to avoid paying Plaintiff—a fact that Plaintiff argues demonstrates State Farm's attempts to avoid paying him UIM benefits. [*Id.*].

Respectfully, neither of these undisputed facts shed any light on State Farm's *subjective* knowledge or reckless disregard of the validity of Mr. Spratley's UIM claim. It is undisputed that State Farm made a payment of $8,384.34 to Plaintiff for undisputed medical expenses. [Doc. 42 at ¶ 7]. It is also undisputed that State Farm made an additional payment of $1,158.00 on January 9, 2020. [*Id.* at ¶ 11]. But Plaintiff points to no evidence from the record—through documents or testimony from State Farm—that State Farm knew or recklessly disregarded that some additional amount of benefits were due from it at the time of the *Fisher* payments or after January 2020, but were nevertheless withheld. Absent any evidence regarding State Farm's subjective knowledge, all that is left before the Court is the *objective* conduct, and speculation as to State Farm's knowledge or disregard. Speculation and conjecture are insufficient to create a genuine issue of material fact as to the element that State Farm "knowingly or recklessly disregarded the validity of the insured's claim" at summary judgment. *See Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (holding that an

16

inference is unreasonable if it is a mere possibility or involves a degree of speculation and conjecture that requires the factfinder to make a guess).

Accordingly, the Court finds that Plaintiff has failed to adduce sufficient evidence of a genuine issue of material fact that would preclude summary judgment on Plaintiff's common law claim of bad faith under Count II.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1) The Motion for Partial Summary Judgment [Doc. 38] is **GRANTED IN PART and DENIED IN PART**;

(2) Summary judgment is **GRANTED** in favor of Defendants State Farm Automobile Insurance Company and State Farm Fire and Casualty Company with respect to Plaintiff's common law bad faith claim under Count II, and **DENIED** as to Plaintiff's statutory unreasonable delay or denial claim under Count III;

(3) All deadlines and hearings set forth in the Trial Preparation Order, [Doc. 47], remain **SET,** including the Trial Preparation Conference set for June 9, 2023 at 10:00 a.m. and the four-day jury trial set to commence on July 17, 2023.

DATED:  May 15, 2023

BY THE COURT:

Nina Y. Wang
United States District Judge